IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DANYALE OWENS, <br><br> Plaintiff, <br><br> v. <br><br> COMPREHENSIVE HEALTH MANAGEMENT, INC., <br><br> Defendants. | Case No. 3:17-CV-1391-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Danyale Owens, proceeding *pro se*, filed this employment discrimination action on December 27, 2017 (Doc. 2). Now pending before the Court is the Motion for Summary Judgment filed by Defendant Comprehensive Health Management, Inc. (CHMI), incorrectly named as Wellcare Health Plans (Doc. 47).[1] For the reasons set forth below, the motion is granted.

### BACKGROUND

The following facts are not genuinely disputed. Plaintiff Danyale Owens began working for CHMI in August 2014 as a Clinical HEDIS Practice Advisor (CHPA) (Doc. 47-1 at p. 3). In her role as a CHPA, Owens would receive raw data from medical providers, abstract and compile the data, quality check the data, and provide the data to the National Committee on Quality Assurance (*Id.* at p. 4). There were two other CHPAs, one black

---

[1] The Clerk of Court is **DIRECTED** to **CORRECT** Defendant's name on the docket to Comprehensive Health Management, Inc.

woman named Myrtle Parnell and one white woman named Patricia Foote. Owens was based in Edwardsville, Illinois, and worked out of her home while the rest of her department was based in Chicago (*Id.* at p. 6).

Around March 2016, Marie Baker became Owens's supervisor (*Id.* at p. 8). Baker asked all CHPAs to begin submitting a form that tracked their daily activities (*Id.* at p. 10). She also informed all three CHPAs that paid time off (PTO) would be limited during "HEDIS season," which ran from January or February to May or June each year (*Id.* at pp. 4, 11). Owens needed to take PTO on Friday, April 15, 2016, however, due to an illness (*Id.* at p. 11). She also requested to take PTO the following Monday and Tuesday, but the request initially was denied by Baker (*Id.* at pp. 11-12). In an email to Owens, Baker stated: "Danyale, timing is not ideal, but your health is more important. I would appreciate, though, the ability for you to be able to work if you felt better over the weekend." (*Id.* at p. 13). Baker copied another CHMI employee, Rose Harrison, on the email; Owens claims Baker did not have permission to share her personal health information with Harrison (*Id.* at pp. 13-14). Baker ultimately stated that if there was a medical situation that prevented Owens from working from home, Baker would need to see a physician's note (*Id.* at p. 12). When Owens provided a doctor's note on Monday, April 18, Baker approved her PTO request and told her to check in on Wednesday regarding her health status (*Id.*).

On April 29, 2016, Baker had a phone call with Owens during which Baker criticized Owens's work performance in front of two co-workers (*Id.* at p. 18). After the conversation, Owens sent Baker an email stating that Baker had been disrespectful and that she did not appreciate Baker talking to her that way (*Id.*). Later that same day, Baker

gave Owens a written warning called a Performance Improvement Plan (PIP) (*Id.* at pp. 18, 32-34). The PIP stated that Baker had five previous conversations with Owens in April 2016 about her unsatisfactory performance (*Id.* at p. 32). The PIP further detailed that: Owens's HEDIS submissions had not met CHMI's requirements, requiring re-work by Owens and the Quality Improvement team; Owens was not receptive to helping team members pick up medical records at a hospital in her area; Owens was not receptive to performance feedback; and Owens had been verbally warned that regular attendance at scheduled meetings was required, as was timely documentation of HEDIS status (*Id.*). Owens believes that the PIP was written in retaliation for that morning's phone call and the email she sent to Baker (*Id.* at p. 28).

On May 3, 2016, Owens emailed Robert Hilliard, CHMI's Illinois market President and Baker's supervisor (*Id.* at pp. 18-19). Owens complained about Baker's management and communication style and lack of professionalism (*Id.* at p. 38). She did not, however, complain that Baker was treating her differently due to her race, any disability, or any protected activity (*Id.*). Hilliard referred Owens to Nina Gaines in CHMI's Employee Relations group (*Id.* at p. 19), and Owens sent Gaines copies of several emails between herself and Baker.

On June 3, 2016, Owens requested FMLA leave to care for her ill mother (*Id.* at pp. 39-44). CHMI approved Owens's FMLA leave from June 6 to August 5, 2016, and later approved an extension through August 26, 2016 (*Id.* at p. 22). On August 9, 2016, while still on FMLA leave, Owens emailed Gaines to ask for the result of her formal complaint regarding Baker (*Id.*). Gaines responded that same day and advised that CHMI policy

was not to discuss such matters with an employee on leave (*Id.* at p. 45). Gaines informed Owens that she would be provided with an update upon her return to work (*Id.*).

Owens was scheduled to return to work from FMLA leave on August 29, 2016, but instead she asked to use a floating holiday so she could take her mother to an appointment (*Id.* at p. 23). Baker approved the request (*Id.*). On August 30, 2016, rather than returning to work, Owens submitted a resignation letter stating: "This letter is to inform you that I am resigning my position as Clinical HEDIS Practice Advisor, effective September 9, 2016. I appreciate the opportunity to work here. I broadened my managed care skills and HEDIS experience." (*Id.* at p. 47). Owens testified she resigned because she thought Baker would terminate her if she returned to work (*Id.* at p. 26). Upon receiving the letter, Baker accepted Owens's resignation, effective immediately (*Id.* at p. 24).

Also on August 30, 2016, prior to submitting her resignation letter, Owens tried to call Gaines to learn the results of the investigation regarding Baker's conduct, but Gaines was no longer working at CHMI (*Id.*).

On February 15, 2017, Owens filed an EEOC Charge claiming that she was wrongfully terminated, was asked her to provide doctor's notes in order to take PTO, and was treated in a disparate manner compared to other employees regarding time off requests (*Id.* at p. 48). She also complained that her supervisor shared her confidential medical information (*Id.*). Despite company policy that her concerns would be investigated within fifteen days of a complaint, she never received the results of the investigation (*Id.*). Furthermore, she claimed that upon her return to work, the investigation still was not complete (*Id.*). Due to her employer's failure to take any

remedial action, she had no choice but to separate from the company (*Id.*). Owens claimed she was retaliated and discriminated against" because of [her] disability and by association with another with a disability in violation of the Americans with Disabilities Act" (*Id.*). Owens did not suffer from any disability during her employment with CHMI (*Id.* at p. 29). Owens did not assert race discrimination in her EEOC Charge (*Id.* at p. 48).

The EEOC was unable to conclude that any statute was violated and issued Owens a Right to Sue letter on September 28, 2017 (Doc. 2-1). Owens then initiated this lawsuit against both CHMI and Baker on December 27, 2017 (Doc. 2). Baker was later dismissed because neither Title VII nor the ADA provide a cause of action against Baker individually (Doc. 21).

In her complaint, Owens claims that she had "no recourse but to resign" because CHMI did not perform a thorough investigation of her claim against Baker (Doc. 2). She asserts that CHMI, through Baker's actions, harassed her, retaliated against her, and discriminated against her by threatening to terminate her, writing her up on falsified grounds, making negative comments about her work performance to Owens's co-workers, refusing to allow her to use PTO for sick days without a doctor's note, and discussing her personal health information with a co-worker without her permission.

CHMI filed this motion for summary judgment on August 30, 2019 (Doc. 47). Owens's response was due on October 3, 2019, but she failed to respond by the deadline. On February 26, 2020, Owens filed an untimely response stating that she had no recourse but to resign from her employment as her rights were violated by Defendant's harassment, discrimination, and retaliation (Doc. 53). She further alleges that Baker

threatened her with termination and falsified information in order to give her an unjustified write-up (*Id.*). Owens cites to the bonus she was awarded a month prior to being placed on PIP and an award she received in 2015 for increased HEDIS rates (*Id.*). Owens further claims there were two other African American women in the department that were harassed and discriminated against by Baker (*Id.*). Owens testified, however, that Baker also was critical of Patricia Foote—a white employee (Doc. 47-1 at p. 29).

Owens did not cite to any evidence in the record to support her claims, nor did she properly address CHMI's assertions of fact. *See* FED. R. CIV. P. 56. Accordingly, the Court considers CHMI's facts undisputed for the purposes of its motion. *Id.*

## LEGAL STANDARD

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion.

*Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, no issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *See Faas v. Sears, Robuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008). The nonmovant cannot simply rely on its pleadings; the nonmovant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (citing *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995); *Greater Rockford Energy and Technology Corp. v. Shell Oil Co.*, 998 F.2d 391, 394 (7th Cir. 1993)). "If a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e). In sum, if a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323-24.

## DISCUSSION

Title VII prohibits employers from discriminating against employees because of their race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). A Title VII discrimination claim requires a showing that an adverse employment action was motivated by discriminatory animus. *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). The statute also forbids employers from retaliating against employees for complaining about prohibited discrimination. *Id.* at 917. Likewise, 42 U.S.C. § 1981 prohibits discrimination on the basis of race in the making and enforcing of contracts, including employment contracts. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459 (1975). Section 1981

provides a federal remedy against racial discrimination in private employment. *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 789 (7th Cir. 2019).

Courts apply the same standards to analyze claims under Title VII and Section 1981. *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015). A plaintiff states a claim of discrimination under Title VII or Section 1981 by asserting that: (1) she is a member of a protected class; (2) she was meeting the employer's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly situated, non-protected class member. *See Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005).

Likewise, to establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse action from the employer; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).

"For purposes of Title VII, an adverse employment action is one that affects the compensation, terms, conditions, or privileges of employment, such as hiring, firing, discharge, denial of promotion, reassignment to a position with significantly different job responsibilities, or an action that causes a substantial change in benefits." *Gibbs v. Gen. Motors Corp.*, 104 F. App'x 580, 583 (7th Cir. 2004) (internal quotation and citation omitted). Furthermore, the action must be "materially adverse, not merely an inconvenience or a change in job responsibilities." *Hilt–Dyson v. City of Chicago*, 282 F.3d

456, 465 (7th Cir. 2002). Title VII does not provide a remedy for actions that do not affect an employee's terms of employment. *See Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) (stating that "not everything that makes an employee unhappy is actionable adverse action").

Here, Owens was not fired, discharged, denied a promotion, or reassigned to a different position with different responsibilities, nor were her compensation, benefits, or terms of employment changed. Instead, Owens voluntarily resigned from her employment at CHMI. Therefore, in order to meet the element of an adverse employment action as required for discrimination and retaliation claims, Owens must demonstrate that she was constructively discharged.

Constructive discharge "occurs when the plaintiff shows that [s]he was forced to resign because h[er] working conditions, from the standpoint of the reasonable employee, had become unbearable." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). The Seventh Circuit recognizes two forms of constructive discharge. In the first form, "an employee resigns due to alleged discriminatory harassment . . . [under] working conditions even more egregious than that required for a hostile work environment claim . . . ." *Id.* (internal citation omitted). Examples of this type of constructive discharge include threats to the plaintiff's life or physical safety. *See, e.g.*, *Porter v. Erie Foods, Int'l, Inc.*, 576 F.3d 629, 640 (7th Cir. 2009) (claim for constructive discharge possible where harassment included repeated use of noose and implied threats of physical violence).

The second form of constructive discharge occurs when "an employer has acted in a manner that has communicated to a reasonable employee that she will be terminated."

*Chapin*, 621 F.3d at 679. But the plaintiff still must show her working conditions were "so intolerable that her resignation qualified as a fitting response." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004). "The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Id.* at 141. "[A] working condition does not become intolerable or unbearable merely because 'a prospect of discharge lurks in the background.' " *Chapin*, 621 F.3d at 679 (quoting *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 333 (7th Cir. 2004)).

Owens simply has not made the required showing here. Construing the evidence in Owens's favor, there is nothing to suggest that her working conditions had become so intolerable that a reasonable person in her position would have felt compelled to resign. On April 29, 2016, Baker criticized Owens's work performance both on the phone and in a written warning, but the record demonstrates that both the email correspondence following the phone call and the written warning were professional in tone. Owens was asked to provide a doctor's note in order to take PTO during her department's busy season, but once the doctor's note was provided, her PTO was approved. When Owens needed to take a floating holiday after her FLMA leave expired, Baker approved it. And while Owens claims that CHMI never performed an investigation into her complaint about Baker, Gaines told Owens she would be provided with an update upon her return to work after FMLA leave. Owens never returned to work to obtain that update.

The Court finds that there is nothing so unbearable about these working conditions that a reasonable employee would have felt compelled to resign. The Seventh Circuit has explained that the court is not to function as a "super-personnel department

intervening whenever an employee feels he is being treated unjustly." *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429,435 (7th Cir. 2005). While Owens may have been embarrassed by critical comments Baker made in front of her co-workers, "anti-discrimination laws are not triggered by rude behavior." *Hoosier v. Greenwood Hosp. Mgmt. LLC*, 32 F. Supp. 3d 966, 978 (N.D. Ill. 2014) (citing *Ford v. Minteq Shapes & Servs.*, 587 F.3d 845, 848 (7th Cir. 2009)). Furthermore, not every perceived unfairness in the workplace can be attributed to discriminatory motivation just because the employee belongs to a protected class. *Id.* The employee must be able to sufficiently connect the discrimination to her race or disability. *Id.* Owens has not done that here.

Because Owens has not set forth any admissible evidence demonstrating that she was constructively discharged from her employment with CHMI or that she suffered any other adverse employment action, CHMI is entitled to judgment as a matter of law.

## Conclusion

For these reasons, the Motion for Summary Judgment filed by Comprehensive Health Management, Inc., incorrectly named as Wellcare Health Plans (Doc. 47), is **GRANTED**. This action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: March 2, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**